IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JIANQIANG WANG, MEIKUN ZHENG, BAILIN WANG, BAIFENG WANG, and BAISHEN WANG,<br><br>Petitioners,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, FIELD OFFICE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS, Honolulu, HI, in an official capacity,<br><br>Respondents. | Civil No. 26-00009 MWJS-KJM<br><br>ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION |

### INTRODUCTION

This is a habeas case brought by Petitioners who are natives of the People's Republic of China and were admitted into the United States for conditional permanent residence as alien entrepreneurs. In early 2024, their efforts to remove the conditions on their permanent residence were unsuccessful. A year later, the government began removal proceedings, which are still ongoing.

In their habeas petition, Petitioners explain that they fear immigration agents will arrest them before their ongoing removal proceedings have concluded. Alongside their

habeas petition, they have filed an emergency motion for a temporary restraining order and a motion for a preliminary injunction, both seeking to enjoin various federal agencies from executing an immigration-related arrest.  Although initially filed on behalf of all, Petitioners have since clarified that their motions seek interim relief only for Petitioner Jianqiang Wang.

　　　The court recognizes the seriousness of Petitioners' contentions.  But it cannot grant them the interim relief they seek on Petitioner Jianqiang Wang's behalf.  The habeas jurisdiction of federal courts is limited to petitioners who are unlawfully "in custody."  28 U.S.C. § 2241(c)(3).  While the phrase "in custody" has been given a broad and flexible interpretation, the court is not persuaded—on the current record—that the phrase is capacious enough to extend to the factual circumstances presented here.  Finding no basis to exercise habeas jurisdiction over the underlying habeas petition, at least on the present record, the court cannot grant Petitioner Jianqiang Wang the interim relief he seeks.  His motions are, therefore, DENIED and the parties' stipulated order preserving the status quo is now LIFTED.

　　　This ruling strongly suggests that the petition itself should be dismissed.  But because the ruling on the motions for interim relief is based solely on the existing record, the court will defer decision on the petition and hold a status conference with the parties to discuss whether there might be any appropriate remaining steps in this case.

## BACKGROUND

    1. "Even once inside the United States, aliens do not have an absolute right to remain here." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Consistent with that principle, Congress has authorized the Attorney General to "issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting 8 U.S.C. § 1226(a)). At the same time, Congress has recognized that the detention of a noncitizen after their arrest may not be appropriate; it therefore has also authorized the Attorney General to "'release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Ibid.*; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (recognizing that § 1226 "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal").

    Under governing regulations, "[w]hen an alien is detained under Section 1226(a), his initial custody determination is made by an ICE officer." *Rico-Tapia v. Smith*, — F. Supp. 3d —, 2025 WL 2950089, at *5 (D. Haw. Oct. 10, 2025). Those same regulations provide that "[a]n alien will be released if he proves to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (cleaned up). If release is denied, a noncitizen may then request a hearing before an immigration judge at which they may be represented by counsel and present evidence; "[a]t this hearing, the

3

immigration judge will order the alien's release if the alien proves, by a preponderance of the evidence, that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (cleaned up).  Given these "several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing where circumstances materially change," the Ninth Circuit has observed that § 1226(a) "stands out from other immigration detention provisions." *Rodriguez Diaz*, 53 F.4th at 1202 (cleaned up).

2.  Petitioners in this habeas proceeding were admitted into the United States in April 2016 for conditional permanent residence as alien entrepreneurs under § 216 of the Immigration and Nationality Act, 8 U.S.C. § 1186a.  *See* Dkt. No. 20-1, at PageID.95.  They sought to remove the conditions on their permanent resident status, but that request was denied in January 2024.  *Id.*  This denial may have come about because of what Petitioners describe as the "failure of the Regional Center project" in which they had sought to invest.  Dkt. No. 6, at PageID.18.  Whatever the case, in early 2025, the government began immigration removal proceedings to altogether terminate their conditional lawful status.

After Petitioner Jianqiang Wang failed to appear before U.S. Immigration and Customs Enforcement (ICE) in September 2025, an administrative arrest warrant was

issued for him on December 1, 2025.  Dkt. No. 20-9.  About three weeks later, ICE agents appeared at a property owned by Petitioners—which they rent out—and after a significant amount of time waiting outside of the property, the agents questioned the tenant about Petitioner Jianqiang Wang's whereabouts.  Petitioners represent that they have been ensconced in their residence (which is in a different part of Honolulu, Hawaiʻi) ever since the ICE agents' appearance at their rented property, out of fear that they might be arrested.  Dkt. No. 11-2, at PageID.42-43.  There is no evidence in the record that any Petitioner other than Jianqiang Wang is subject to an administrative warrant or otherwise facing the prospect of an immigration-related arrest.

    The pending habeas petition was filed in January of this year.  Given that Petitioners are not in physical custody, they unsurprisingly do not name any custodian as a respondent.  But the petition does not name any public official at all.  It instead names the "United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, Field Office Director, ICE Enforcement and Removal Operations, Honolulu, HI, in an official capacity."  Dkt. No. 6, at PageID.16; *see also* Dkt. No. 14 (notice of appearance by AUSA on behalf of "Defendants United States Department of Homeland Security, United States Immigration and Customs Enforcement, Field Office

5

Director, ICE Enforcement and Removal Operations, Honolulu, HI, in their official capacities").[1]

Invoking this court's habeas jurisdiction, the petition asserts that a "credible threat of arrest or detention by immigration authorities satisfies the custody requirement." Dkt. No. 6, at PageID.20. And the petition contends that if Petitioners are arrested and then detained without bond, that detention would be unlawful for two reasons. First, Petitioners "have not absconded, and neither do they present a flight risk or danger to the community." *Id.* at PageID.19. Second, "[d]etention would substantially impair their ability to prepare for their merits hearing [in their ongoing removal proceedings], access documents and witnesses, and consult meaningfully with counsel." *Id.* at PageID.21-22.

---

[1]  Respondents correctly note that a habeas petition cannot name government agencies as respondents, but must instead name the custodian (in the case of a "core" habeas jurisdiction) or (at least in some non-core cases) the Attorney General. *See* Dkt. No. 20, at PageID.71 n.1. Petitioners have accordingly moved to amend the caption to include the Attorney General, whom they represent has been served with all the relevant filings in this case. *See* Dkt. No. 23.

Although the failure to name the proper custodian or the Attorney General would be a proper basis on which to deny the petition and motions for interim relief, any such denial likely would be without prejudice, especially in light of Petitioners' pending motion to correct the petition. The court has instead concluded that, on the present record, it is not persuaded that it possesses jurisdiction. In light of that jurisdictional conclusion, the court need not resolve Petitioners' motion to correct the petition before denying the motions for interim relief, and that motion will be held in abeyance until the next status conference.

Alongside the habeas petition, Petitioners have moved for a temporary restraining order and preliminary injunction.  They initially moved for an ex parte temporary restraining order, Dkt. No. 1, but the court denied that motion on the ground that the motion did not meet the demanding standards governing ex parte relief, Dkt. No. 12.  The court separately instructed Petitioners to supplement their motions for interim relief to address the question of why habeas jurisdiction would exist here, despite the fact that Petitioners are not physically in custody, Dkt. No. 5, and Petitioners filed such supplementation, Dkt. Nos. 11 and 11-2.  The court therefore ordered Petitioners to serve their petition and motions on Respondents.  Dkt. No. 12.

The court thereafter held a status conference at which it set a briefing schedule for Respondents to respond to the petition and motions.  Dkt. No. 17.  Given that Respondents' requested schedule extended past the deadlines set in 28 U.S.C. § 2243, Respondents agreed to a temporary status quo order precluding the immigration-related arrest of any Petitioner while the motions for interim relief remained pending.  Dkt. Nos. 17-19.  Respondents have also represented that if any Petitioner were arrested based on the ongoing revocation proceedings, they would be entitled to a bond hearing at which they could argue for their release on conditions.

No party requested an evidentiary hearing for the pending motion for preliminary injunction; nor did any party identify any disputes of material fact.  But the court heard arguments from counsel at a hearing on February 12, 2026.  Dkt. No. 22.

7

## DISCUSSION

When a noncitizen is detained for immigration-related reasons, they generally may invoke a federal district court's habeas jurisdiction to test the legality of that detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).  But federal habeas jurisdiction has an important limit:  a petitioner must be "*in custody* in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3) (emphasis added).  And even when it would otherwise apply, Congress has further limited habeas jurisdiction in a number of ways; to take just one example, 8 U.S.C. § 1252(b)(9) precludes judicial review of any claim "arising from any action taken or proceeding brought to remove an alien from the United States."

In support of their habeas petition and motions for interim relief, Petitioners emphasize that they "do not seek review of removal proceedings or any final order of removal."  Dkt. No. 21, at PageID.139.  That is true, and it is the reason why their petition is not barred by § 1252(b)(9)'s limit on habeas jurisdiction.  But it is insufficient to show that Congress has not stripped the court of habeas jurisdiction that it would otherwise have.  Petitioners must also show that habeas jurisdiction exists in the first place.

To make that latter showing, Petitioners must establish that they are "in custody" within the meaning of § 2241(c)(3).  The Supreme Court has broadly and flexibly defined the phrase "in custody" as extending to "both physical detention and 'other

8

restraints on a man's liberty, restraints not shared by the public generally.'" *Veltmann-Barragan v. Holder*, 717 F.3d 1086, 1088 (9th Cir. 2013) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).  But the phrase is not unbounded.  For example, the Ninth Circuit has acknowledged that "individuals are 'in custody' for purposes of § 2241 if they are 'subject to a final order of deportation.'"  *Id.* (quoting *Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir. 1995)).  But it also has held that a person who is at one time subject to a removal order, and who is in fact removed from the United States, does not qualify as being "in custody" once again if she returns to the United States.  That is because, the Ninth Circuit reasoned, "[r]einstatement of a prior order of removal is not automatic;" the government "must take various affirmative steps before it can reinstate a removal order."  *Id.* (cleaned up).  Analogizing a final order of removal to a "conviction" in the criminal context, the Ninth Circuit pointed to the Supreme Court's admonition that the phrase "in custody," while "very liberally construed," has never been extended "to the situation where a habeas petitioner suffers no present restraint from a conviction."  *Id.* (quoting *Maleng v. Cook*, 490 U.S. 488, 492 (1989)).

    In this case, Petitioners are not currently suffering any present restraint from a final order of removal.  While removal proceedings are ongoing, they have not yet concluded—let alone concluded unfavorably.  Petitioners therefore cannot, at this stage, avail themselves of precedent supporting the existence of habeas jurisdiction in the face of a final order of removal.  Indeed, they are even less favorably situated than the

9

petitioner in *Veltmann-Barragan*; a final order of removal had previously been entered in that case and could fairly easily have been reinstated, whereas no final order of removal has ever been entered against Petitioners here.

Petitioners also argue that this court may exercise habeas jurisdiction based on their fears of an imminent immigration-related arrest. On the present record, that argument could not benefit any Petitioner other than Jianqiang Wang, as Petitioner's counsel acknowledged at the hearing on these motions. That is because only Jianqiang Wang is subject to an administrative arrest warrant; only he was ordered to appear before ICE in September 2025 and then failed to do so; and ICE agents only asked about his whereabouts when they approached the tenant at Petitioners' rental property. So even if an imminent arrest was a valid basis for the exercise of habeas jurisdiction, that jurisdiction would at most be validly exercised on behalf of Jianqiang Wang.

At least on the present record, the court is not persuaded that the administrative warrant against Jiangqiang Wang suffices to support habeas jurisdiction. This conclusion is based not only on the record as it currently exists, but on a careful assessment of the substance of Petitioners' argument. Petitioners do not distinctly argue that the Attorney General lacks the statutory authority to *arrest* Jianqiang Wang; nor does it appear they could plausibly make any such argument, given the Attorney General's clear authority under § 1226(a) to "issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United

10

States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)).  Petitioners' argument is, instead, that Jianqiang Wang's *detention* following an arrest would be unlawful, both because he asserts he is neither a flight risk nor a danger to the community (and so there is no basis for detention), and because his detention would impair his ability to represent himself in the ongoing removal proceedings (and so detention would unlawfully harm his due process rights).  They further contend that because a post-arrest detention would be unlawful, an arrest is not appropriate because of their prediction that it would lead to a detention.

  But while it might be possible to conclude that an arrest of Jianqiang Wang is reasonably likely here, the court on this record cannot similarly predict that he is likely to be detained following any such arrest.  For the harm of detention to come about—the harm that is truly the driving force of the petition here—Jianqiang Wang would not only need to be arrested on the administrative warrant; he would also then need to either be deprived of a bond hearing (despite the government's recognition that he would be entitled to one under § 1226, *see* Dkt. No. 20, at PageID.74, 75, 79-80, 83-84), or he would need to be denied release on bond after that hearing (despite his insistence that there is no basis to conclude that he is a flight risk or a danger to the community).  And if he were denied release on bond, he would need to be correct in his prediction that there would be no evidentiary basis to conclude that he is a flight risk or otherwise properly detainable (despite, for instance, his failure to appear before ICE in September

11

2025).  There are simply too many contingencies between the constitutional deprivation Jianqiang Wang fears and the present state of the record.  Under these circumstances, the court cannot conclude that he is "in custody" within the meaning of § 2241(c)(3).

That is not to say that a petitioner could never invoke this court's habeas jurisdiction based on the threat of an arrest.  If, for example, the government were to take the position that a petitioner is subject to mandatory detention, there would be a stronger argument that habeas jurisdiction is available to scrutinize a planned arrest that would inevitably lead to that detention.  Or there could be situations in which the government had already found or committed itself to the position that a petitioner does not present a flight risk or danger to the community, in which case a threatened immigration arrest could more readily be viewed as threatening even a brief detention (of whatever time is needed to conduct a bond hearing before an immigration judge) that is unwarranted and therefore unlawful.  *Accord Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919 (N.D. Cal. 2025) (involving a petitioner who had previously been found not to present a flight risk or danger to the community and against whom the government sought mandatory detention and expedited removal), *appeal docketed*, No. 25-7472 (9th Cir. Nov. 26, 2026).  Another conceivable situation could be one in which the arrest itself is unlawful—for instance, if the government were ever to issue an immigration arrest warrant for a U.S. citizen or for an unconstitutional purpose.

None of those kinds of circumstances are presented here. Although Petitioners suggest that Respondents are motivated by a desire to impede Petitioners' ability to defend themselves in the ongoing removal proceedings, there is no evidence to substantiate that assertion. Rather than compare favorably with any of the above hypothetical cases in which habeas jurisdiction might conceivably lie pre-arrest, the present facts are more akin to a situation in which law enforcement agents have determined, based on their own assessment of probable cause, that a person should be arrested on federal criminal charges. Federal law allows law enforcement agents in those circumstances to make the arrest and then file an affidavit in support of a criminal complaint promptly after the fact. *See* Fed. R. Crim. P. 5(b) ("If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed."). The most expansive interpretation of the phrase "in custody" would not, at least under ordinary circumstances, reach so far as to allow a federal court to enjoin agents from conducting such an arrest (let alone allow a petitioner to use a habeas petition as a tool to probe whether such an arrest is forthcoming). And while the present circumstances are different, they are similar enough to support the conclusion that this court lacks habeas jurisdiction to enjoin immigration-related arrests in the manner Petitioners here request.

Petitioners do offer a backup argument: they contend that "[i]ndependent of habeas jurisdiction, this Court possesses authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue orders necessary to preserve its jurisdiction and the integrity of related adjudicative proceedings." Dkt. No. 16, at PageID.51. That is true, but it does not support finding jurisdiction here. As the Supreme Court has explained, "[w]hile the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999). In that way, the All Writs Act empowers this court to issue writs in the service of otherwise-existing jurisdiction, but "does not enlarge that jurisdiction." *Id.* at 535; *see also United States v. Denedo*, 556 U.S. 904, 914 (2009) ("The authority to issue a writ under the All Writs Act is not a font of jurisdiction."). Thus Petitioners' All Writs Act argument is not truly an alternative basis for jurisdiction; it instead is wholly dependent upon their principal argument that habeas jurisdiction exists. Because the court has not accepted Petitioners' arguments for habeas jurisdiction, it must also reject their request that the court rely on the All Writs Act instead.[2]

---

[2] Petitioners' reliance on *Nken v. Holder*, 556 U.S. 418, 428-29 (2009), and *Leiva-Perez v. Holder*, 640 F.3d 962, 968-70 (9th Cir. 2011), is misplaced for similar reasons. The Supreme Court in *Nken* did not, as Petitioners suggest, hold that habeas jurisdiction exists whenever a court concludes that it must "enjoin executive action that threatens to moot pending adjudications or to deprive courts of the ability to grant effective relief." Dkt. No. 21, at PageID.140. There unquestionably was jurisdiction in that case—the petitioner in that case did not invoke habeas jurisdiction, but instead the jurisdiction of

14

For these reasons, the court concludes that Petitioners cannot show a likelihood of success on the merits of their petition, or even a serious question going to the merits. And because they have not done so, the court cannot grant them their requested interim relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

The same reasons would require the court to dismiss the petition itself. But because the court denies the motions for interim relief based solely on the record currently before it, the court will defer decision on the petition and hold a status conference with the parties to discuss whether there might be any appropriate steps remaining in this case.

## CONCLUSION

For the foregoing reasons, the emergency motion for a temporary restraining order and motion for a preliminary injunction are DENIED. Furthermore, because the court has now resolved these motions for interim relief, the parties stipulated order preserving the status quo, Dkt. No. 19, is hereby LIFTED.

//

//

---

the federal courts of appeals to review the decisions of the Board of Immigration Appeals—and the question was whether Congress had stripped appellate courts of their ordinary power to enter stays of removal orders pending appeal in these circumstances. The Ninth Circuit in *Leiva-Perez*, in a similar procedural posture, simply abided by *Nken* and granted a stay of a removal order pending an appeal of a Board of Immigration Appeals decision.

IT IS SO ORDERED.

DATED: February 17, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 26-00009 MWJS-KJM; *Jianqiang Wang,* et al. *v. United States Department of Homeland Security,* et al.; ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION